NOT FOR PUBLICATION

<u>LETTER OPINION</u>

July 12, 2011

<u>Via Electronic Filing</u>

Abraham S. Alter
Langton & Alter
P.O. Box 1798
1600 St. Georges Ave.
Rahway, NJ 07065

Tomasina DiGrigoli
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

> Re:  **<u>Ronnie Huggins v. Commissioner of Social Security</u>**
> **Civil Action No.: 10-3713 (JLL)**

Dear Counsel:

  Presently before the Court is an appeal filed by Ronnie Huggins (hereinafter "Claimant") seeking review of the Administrative Law Judge's ("ALJ") decision partially denying his claim for Supplemental Security Income Benefits ("SSI"). This Court did not hear oral argument pursuant to Fed. R. Civ. P. 78. Plaintiff claims that the ALJ's decision was not supported by substantial evidence and therefore requires reversal, or alternatively, remand to the ALJ for further proceedings. Defendant argues that the ALJ's findings are supported by substantial evidence and should be upheld. The Court, having considered the parties' submissions, and for the reasons set forth below, affirms the decision of the ALJ.

## PROCEDURAL HISTORY

  Claimant applied for SSI on April 16, 2004. ALJ John M. Farley held hearings on July 5, 2006. On October 17, 2006 ALJ Farley determined that Claimant was not disabled prior to August 14, 2005, but became disabled on that date. The Appeals Council remanded ALJ Farley's decision on February 28, 2008. ALJ Farley held additional hearings on May 8, 2008 and on May 30, 2008 again determined that Claimant was not disabled prior to August 14, 2005, but became disabled on that date and continues to be disabled. The Appeals Council affirmed that decision on May 25, 2010. Claimant now appeals ALJ Farley's ruling pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

  Claimant, Ronnie Huggins, born October 20, 1960, was forty-three years old at the time of his application. (R. 19.) He left school in the eleventh grade in approximately 1977 and earned his GED in 1979. (R. 207.) He is able to communicate in English. (R. 19.) Claimant has worked at a variety of positions throughout his adult life, mostly "unloading trucks." (R. 208.) The longest position held by Claimant was as a skycap and porter at Newark Airport from approximately July 1980 until January 1989. (R. 92.) Claimant would frequently lift forty pounds and up to seventy pounds at this position. (R. 93.) Claimant had difficulty finding and maintaining work during the 1990s and only worked briefly at three separate warehouses for a total of approximately six months. (R. 92.) Claimant's most recent position was performing maintenance and cleaning for the Community Food Bank in Hillside, NJ, from approximately September 1999 to September 2001. Id. Claimant alleges he stopped working at this position because he was having difficulty performing the duties required by the job, stating, "I felt that I could not do the lifting and other physical tasks required on that job." (R. 91.)

  Claimant received a physical examination on September 13, 2004 from Dr. Alexander Hoffman. (R. 146-51.) Dr. Hoffman reported that Claimant was five feet ten inches tall and weighed 144 pounds and that Claimant was alert, fully oriented as to time, place and person and was cooperative with Dr. Hoffman. (R. 147.) Claimant got on and off the examining table without difficulty and walked with a normal gait without the use of an assistive device. Id. The record states that his skin was warm and dry with good turgor, his blood pressure was 112/82 in the right arm, and his visual acuity was 20/50 in the right eye and 20/40 in the left eye without correction. Id. Claimant's sclera were nonicteric, the conjunctivae were clear, the anterior chambers were normal and the posterior fundi had no hemorrhages or exudates. Id. Dr. Hoffman noted that the tympanic membranes and external auditory canals were clear and that the pharynx was free of exudates. Id. The record further states that dentition was quite poor, the neck was supple without adenopathy or thyromegaly, the carotids were equal bilaterally, and no bruits were heard. Id. Additionally, the chest expanded symmetrically and the lungs were clear to percussion and auscultation with no wheezes, rales or rhonchi. Id. The record states that the heart exhibited normal S1 and S2 sounds and there was no murmur or friction rub. Id. Additionally, Claimant's abdomen was tense and sensitive to any type of palpation, especially in right and left upper quadrants and there was slight hepatic enlargement on the right side, but there were no other masses. Id. Dr. Hoffman noted that the lower extremities revealed no edema, cyanosis, clubbing, or trophic changes and that the peripheral pulses were intact. Id. Additionally, there was normal dorsiflexion and plantar flexion of the toes and there was normal straight leg raising to 90 degrees. Id. Deep tendon reflexes were intact throughout and upper body strength was intact with good grip and full range of motion of the wrist, elbow and shoulder. Id. Claimant was able to flex and almost touch his toes and he could do deep knee bends and could balance on either leg without difficulty and walk on both heels and toes. Id. An electrocardiogram revealed sinus rhythm and a ventricular rate of 88/min. with a QRS, PR interval of 208 milliseconds. Id. There was a borderline first degree AV block, but the electrocardiogram was otherwise normal. Id. Dr. Hoffman concluded that there was no specific neurological deficit on examination. (R. 148.)

  Claimant received an RFC assessment from Dr. Kopel Bunk, a State agency medical consultant, on October 6, 2004. (R. 152-59.) Dr. Bunk, a State agency medical consultant,

concluded that Claimant could lift and carry ten pounds frequently and twenty pounds occasionally, sit for about six hours, and stand and/or walk for about six hours in an eight-hour day. (R. 153.) Pushing and pulling were unlimited. Id. Plaintiff could occasionally climb ramps and stairs but could not climb ladders, ropes or scaffolds. (R. 154.) He could occasionally balance, stoop, kneel, crouch and crawl. Id. There were no other limitations. (R. 155-56.)

ALJ Farley ordered another examination during Claimant's first hearing. (R. 206.) Dr. Alexander Hoffman performed a second consultative examination on August 14, 2006. (R. 160-68.) Dr. Hoffman noted that Claimant was alert, fully oriented and cooperative. (R. 161.) The record states that Claimant walked slowly with a normal gait and did not use any assistive device and that he had no difficulty getting on and off the examining table. Id. Claimant appeared lucid, but he was not too clear about the details of his medical history. Id. The record states that Claimant was five feet ten inches tall and weighed 144 pounds, his blood pressure was 150/90 in the right arm, his visual acuity was 20/40 in each eye without correction. Id. Claimant's skin was warm and dry with good turgor and his head was normocephalic. Id. His pupils were equal and reactive to light and accommodation, extraocular movements were full, the sclera were not icteric and the conjunctivae were clear. Id. Additionally, the record states that the anterior chambers were free of opacities, the posterior fundi had no pathology, the tympanic membranes and external ear canals were clear, and the pharynx was free of exudates. Id. Dr. Hoffman noted that Claimant was edentulous, that his neck was supple, there was no adenopathy or thyromegaly, the carotids were equal and no bruits were heard. Id. The examination of the chest to auscultation and percussion revealed no wheezing, rales or rhonchi and the heart exhibited a regular rate and rhythm, normal S1 and S2 sounds, and no murmur or friction rub. Id. The record states the abdomen was slightly protuberant and tense, there was tenderness on any type of palpation of the abdomen, and there was some evidence of hepatic enlargement on the right side. Id. Claimant was extremely sensitive to any type of pressure on the abdominal cavity. (R. 162.) Additionally, Dr. Hoffman noted the lower extremities had no edema, cyanosis, clubbing, or trophic changes, and he found no evidence of peripheral vascular disease. Id. The record states that there was normal dorsiflexion and plantar flexion, that deep tendon reflex response was intact, and that straight leg raising was to approximately 60 degrees bilaterally. Id. Claimant had slight difficulty walking on his heels and toes, he had slight difficulty keeping his balance on one foot or the othe, he could bend at the knees halfway and he could flex at the waist halfway. Id. The electrocardiogram revealed sinus rhythm and a ventricular rate of 84/min. with evidence of a first degree heart block, and some nonspecific ST/T wave changes. (R. 162-63.) Dr. Hoffman stated that Claimant had a history of hepatic disease, possibly cirrhosis of several years duration in addition to a history of chronic diarrhea and recent melena, which needed to be evaluated by colonoscopy. Id. Dr. Hoffman commented that plaintiff's endurance and ability to ambulate were apparently affected by his condition, and that his major problems seemed to be hepatic disease and several episodes of epistaxis. Id.

In a medical source statement of ability to do work-related activities (physical) dated August 14, 2006, Dr. Hoffman stated that plaintiff could lift and carry less than ten pounds occasionally. (R. 165.) Claimant could stand and/or walk for less than two hours in an eight-hour day. Id. His ability to sit was not affected. (R. 166.) Pushing and pulling were limited by abdominal pain. Id. Claimant could occasionally crouch and crawl and stoop. Id. He could not balance, kneel or climb ramps, stairs, ladders, ropes or scaffolds. Id. He needed to avoid hazards such as machinery or heights. (R. 168.) Dr. Hoffman noted no other limitations. (R. 167.)

## LEGAL STANDARDS

### A.    Determining Disability

In order to receive SSI benefits under the Social Security Act, a claimant must demonstrate that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …" 42 U.S.C. § 1382c(a)(3)(B).  The Social Security Regulation has established a five-step sequential evaluation for adjudication of disability claims, set forth at 20 C.F.R. § 404.1520(a)(4).

The sequential evaluation process is a series of five steps followed in order.  If it is determined that the claimant is disabled or not at any step, a decision is made and the evaluation will cease.  If a determination cannot be made that the claimant is disabled or not at any step, the evaluation will continue to the next step.  At step one, the Commissioner is required to determine if the claimant is engaging in substantial gainful activity.[1]  If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. Id. at § 404.1520(a)(4)(i); see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).  If not, the Commissioner must determine at the second step whether claimant has any "severe impairments." 20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does have severe impairments, the Commissioner proceeds to the third step to determine whether the impairment meets or equals the criteria of a "per se disabling" impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner then proceeds to the fourth step where he must determine claimant's residual functional capacity ("RFC") and determine whether claimant can return to his past relevant work.  If claimant is unable to perform his past relevant work based on his RFC, the Commissioner proceeds to the final step.  At step five, the burden shifts to the Commissioner to show that, based on claimant's RFC and vocational factors, claimant can perform other work existing in significant numbers in the national economy.  If the Commissioner cannot show that claimant can perform other work in existence, claimant is determined disabled and is entitled to disability benefits.

---

[1] Substantial gainful activity is defined as work that is substantial and gainful. 20 C.F.R. § 416.972.  Substantial work activity is comprised of significant physical and mental activities. Part-time work or work that is diminished in responsibility or pay as compared to prior experience may be considered substantial. 20 C.F.R. § 416.972(a). Gainful work is work activity performed for pay or profit. Work activity is considered gainful, if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b).

4

B.    **Standard of Review**

      This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Court must affirm the ALJ's decision if it is supported by substantial evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); see also 42 U.S.C. § 405(g).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate support to a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, when the "[ALJ] is faced with conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See generally Taybron v. Harris, 667 F.2d 412, 413 (3d Cir., 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir., 1992).  Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (review is limited to determining whether decision as a whole is arbitrary, capricious, or contrary to law).

      In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).  When a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§ 416.927(c)(1), (d)(2) (2007).  However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence [to decide] whether [the claimant] is disabled …" 20 C.F.R. § 416.927(c)(2).  With this framework in mind, the Court now turns to Claimant's arguments.

## LEGAL DISCUSSION

A.    **Summary of the ALJ's Findings**

      The Court begins by reviewing the ALJ's application of the above five-step process.  At step one, ALJ Farley found that Claimant was not engaged in substantial gainful activity since September 30, 2001, the alleged onset date. (R. 15.)  The ALJ then concluded at step two that since the alleged onset date of disability, Claimant had the following severe impairments, based on the medical evidence in the record: residuals of liver disease, high blood pressure, hernia and a past history of substance abuse. Id.  Accordingly, the ALJ proceeded to step three where he determined that since the alleged onset date of disability, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. Id.  The ALJ stated that he evaluated the liver disease under section 5.05 (Digestive System) of the medical listings and that the requirements in subsections A through F were not completely satisfied. (R. 16.)  The ALJ further stated that hypertension did not satisfy the requirements of any of the cardiovascular system impairments under section 4.00 of the medical listings, nor did the hernia satisfy the requirements under

section 1.08 (Musculoskeletal System). Id.  Regarding Claimant's past substance abuse disorder, the ALJ noted that the record showed that Claimant had not abused substances for two or three years and the ALJ concluded that its current effects were not enough to constitute a "severe" impairment within the meaning of the Social Security Act. Id.

ALJ Farley then proceeded to step four, where upon careful consideration of the entire record, he found that Claimant, prior to August 14, 2005, had the RFC to perform the full range of light work as defined in 20 CFR 416.967(b). (R. 16.)  In support of his RFC determination, ALJ Farley pointed to objective medical evidence in the record obtained on September 13, 2004 and August 14, 2006 by examinations from Dr. Hoffman.  According to Dr. Hoffman, the September 13, 2004 examination revealed Claimant possessed a "relatively normal" gait and station which did not require any hand-held device and that Claimant did not suffer from any "specific neurological deficit" despite cirrhosis of the liver and a history of alcoholism. (R. 147-48.)  The August 14, 2006 examination, however, showed that Claimant suffered from hepatic disease, possibly cirrhosis of several years duration, abdominal tenderness, a history of chronic diarrhea, recent melena, and several episodes of epistaxis. (R. 162.)  Dr. Hoffman noted that Claimant's endurance and ability to ambulate were "apparently effected [sic]" by these impairments. Id.  Relying on this evidence, ALJ Farley conceded that Claimant "was markedly more impaired in 2006 than when seen by the same doctor in 2004." (R. 17.)  Based on a consideration of the entire case record, ALJ Farley clarified that while Claimant's impairments could reasonably be expected to cause the alleged symptoms, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible prior to August 14, 2005, to the extent the complaints were inconsistent with the RFC assessment. (R. 17-18.)

ALJ Farley thus concluded that the evidence failed to support Claimant's assertions of total disability since 2004 and ALJ Farley formulated two different RFC assessments. (R. 18.) According to ALJ Farley, until August, 2005, Claimant had the RFC to perform work that involved lifting and carrying objects up to twenty pounds; frequently lifting and carrying objects weighing up to ten pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and the full range of light work. Id.  In contrast, beginning on August 14, 2005, according to ALJ Farley, Claimant had a reduced RFC and was only able to perform work that involved lifting and carrying up to ten pounds; standing and walking for up to two hours and sitting for six hours; not involving sustained periods of concentration; and allowing for frequent breaks and absences as necessary for fatigue and bathroom visits. Id.  Concluding the step four analysis, ALJ Farley found that neither RFC was sufficient for Claimant to perform past relevant work, since the exertional demands of that work exceeded Claimant's RFC for light work.

ALJ Farley then proceeded to step five to determine whether Claimant could perform other work in the national economy existing in significant numbers. The ALJ considered Claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, to make his determination. (R. 19.)  ALJ Farley noted that Claimant was forty-three years old, which is defined as a younger individual, on the date his SSI application was filed, that Claimant has at least a high school education and is able to communicate in English, and that transferability of Claimant's job skills was not an issue since Claimant's previous work was unskilled. Id.  Because Claimant's impairments were purely exertional, ALJ Farley was authorized in relying on the Medical-Vocational Tables.  Prior to August 14, 2005, the ALJ concluded, Claimant was not disabled

within the meaning of the Social Security Act since his RFC allowed for a full range of light work and there were a significant number of jobs in the national economy meeting this criteria. Id. ALJ Farley reached this conclusion upon direct application of Medical-Vocational Rule 202.20. Id. Beginning on August 14, 2005, however, Claimant was disabled within the meaning of the Social Security Act since there were not a significant number of jobs in the national economy that met his diminished RFC, which, as noted above, was adjusted to take into account the additional physical limitations discovered by Dr. Hoffman during the August 14, 2006 examination. (R. 19-20.) ALJ Farley reached this partially favorable decision by applying Medical-Vocational Rule 201.27. (R. 20.)

**B.**    Analysis

      1.    The ALJ's Decision That Claimant Was Not Disabled Prior to August 14, 2005 is Supported by Substantial Evidence

      The first issue before the Court is whether the ALJ's decision finding Claimant not disabled prior to August 14, 2005 is supported by substantial evidence. For a person to be found disabled within the meaning of the Social Security Act, the Claimant must show more than just the mere presence of a disease or impairment. Claimant must show functional limitations that prevent him from engaging in any substantial gainful activity and those limitations must be caused by his disease or impairment. Alexander v. Shalala, 927 F. Supp. 785, 792 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996) (per curiam); Capoferri v. Harris, 501 F. Supp 32, 36 (E.D. Pa. 1980), aff'd., 649 F.2d 858 (3d Cir. 1981). Dr. Hoffman's first examination of Claimant on September 13, 2004 provides no evidence that Claimant suffered from a hernia. (R. 146-48.) During the second examination, however, Dr. Hoffman noted that Claimant gave a history of hernia surgery. (R. 161.) Nothing in the record shows that the hernia prevented Claimant from working prior to August 14, 2005. Likewise, in 2004, Dr. Hoffman found that Claimant's blood pressure was 112/82, an indication of prehypertension. In 2006, Claimant's blood pressure had risen to 150/90, indicating stage I hypertension according to the Merck Manual of Diagnosis and Therapy. There is no evidence showing that Claimant suffered from elevated blood pressure which would have prevented him from working prior to August 14, 2005. Furthermore, although Dr. Hoffman in the 2004 examination noted that Claimant had been diagnosed with cirrhosis of the liver, Dr. Hoffman's evaluation revealed a wide array of functionality for Claimant that would have allowed him to work. There is no evidence to suggest otherwise prior to August 14, 2005.

      Claimant points to his subjective complaints as evidence that he was disabled prior to August 15, 2004. In order to establish disability, however, there must be more than just subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b). Furthermore, an ALJ may reject testimony of subjective complaints where it is not consistent with the medical evidence. See, e.g., Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002). ALJ Farley gave careful consideration to Claimant's subjective complaints relying on the factors listed in 20 CFR § 416.929(c)(3) when comparing the complaints to the objective medical evidence. (R. 18.) The ALJ was well within his discretion when he ultimately determined that Claimant's subjective claims were not credible prior to August 14, 2005 because they were inconsistent with the

objective medical evidence.  For example, Claimant complained of difficulty walking. (R. 212.) However, in the September 13, 2004 examination, Dr. Hoffman found that plaintiff could walk with a normal gait without using any assistive device. (R. 147.) Claimant also complained of inability to bend. (R. 216.)  This complaint is inconsistent with Dr. Hoffman's finding from the September 2004 examination that Complainant could flex and almost touch his toes. (R. 147.) Furthermore, the ALJ noted that Complainant did not consistently take prescription medication to help treat his impairments. (R. 18.)  This is supported by Dr. Hoffman's September 2004 evaluation in which Dr. Hoffman observed that Complainant reported that he was not taking any particular medication other than Imodium for diarrhea. (R. 146, 147.)  For these reasons ALJ Farley's determination that Claimant was not disabled prior to August 14, 2005 is supported by substantial evidence.

> 2. The ALJ Properly Conducted Step-Five Analysis Without Vocational Expert Testimony Because The ALJ's Determination That Claimant Did Not Suffer a Non-Exertional Limitation is Supported by Substantial Evidence

Complainant argues that the ALJ should have used a vocational expert at step five to determine the availability of jobs in the national market. (Pl. Br. at 13-27.)  ALJ Farley's first partially favorable determination of disability was remanded by the Appeals Council on February 28, 2008. (R. 182-85.)  In that remand order, the Appeals Council instructed ALJ Farley to consult a vocational expert. (R. 184.)  ALJ Farley held additional hearings on May 8, 2008 but did not consult a vocational expert. (R. 220-27.)  On May 30, 2008 ALJ Farley determined that Claimant was not disabled prior to August 14, 2005, but became disabled on that date and continues to be disabled. (R. 10-20.)  The Appeals Council denied Claimant's request for review on May 25, 2010. (R. 5-7.)

A non-exertional limitation is one that effects a plaintiff's "ability to meet the demands of jobs other than the strengths demands . . . ." C.F.R. § 404.1569a (c) (1).  Some examples of non-exertional limitations include:

> (1) Difficulty functioning due to nervousness, anxiety or depression; (2) Difficulty maintaining attention or concentrating; (3) Difficulty understanding or remembering detailed instructions; (4) Difficulty seeing or hearing; (5) Difficulty tolerating a physical feature of the work; or (6) Difficulty performing some manipulative or postural form of the work, such as reaching, handling, stooping, climbing, crawling, or crouching.

Id. When a Plaintiff has severe exertional *and* non-exertional impairments, the ALJ may not rely solely on the grids to determine employment availability in the national economy. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000).  In making such a determination, the ALJ must utilize a "vocational expert or other similar evidence." Id. Without utilizing vocational evidence, an ALJ cannot properly establish whether jobs exist in the national economy for a plaintiff with a combination of exertional and non-exertional impairments. Id.

However, the ALJ properly relied solely on the grids to determine employment availability in the national economy because ALJ Farley concluded that Complainant had "no

significant non-exertional limitations." (R. 18.)  Because Complainant's limitations were strictly exertional, a vocational expert was not necessary. Green v. Schweiker, 749 F.2d 1066, 1072 (3d Cir. 1984); Wallace v. Secretary, 722 F.2d 1150 (3d Cir. 1983); Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982); Santis v. Schweiker, 676 F.2d 925, 935 (3d Cir. 1982).  Complainant points to the October 6, 2004 assessment by State agency medical consultant Dr. Bunk to contend that he suffered non-exertional limitations. (Pl. Br. at 25.)  Specifically, Dr. Bunk concluded that Claimant could not climb ladders, ropes, or scaffolds. (R. 154.)  However, ALJs are under no obligation to accept the conclusions of State agency medical consultants, as specified in the Social Security regulations. 20 C.F.R. § 416.927(f)(2)(i).  ALJ Farley was within his power when he viewed Dr. Bunk's assessment in light of the totality of the evidence and concluded that Claimant did not suffer non-exertional limitations prior to August 14, 2005.  Accordingly, this Court finds that the ALJ's determination at step five is supported by substantial evidence in the record.

Complainant also argues that the lack of a vocational expert at the May 8, 2008 hearing requires remand of ALJ Farley's May 30, 2008 decision because the Appeals Council explicitly instructed ALJ Farley to consult a vocational expert. (Pl. Br. at 23-24.)  This claim is without merit for two reasons.  First, Claimant's attorney was present at the May 8, 2008 hearing and made no objection to the lack of a vocational expert. (R. 222-27.)  Second, the Appeals Council affirmed ALJ Farley's May 30, 2008 decision. (R. 5-7.)  This is significant because it implies that the Appeals Council ultimately agreed with ALJ Farley that a vocational expert was not in fact necessary.  Otherwise, the Appeals Council would not have given their seal of approval on the May 30, 2008 decision.

## **CONCLUSION**

For the reasons discussed above, the ALJ's decision that Claimant was not disabled prior to August 14, 2005 was supported by substantial evidence.  The decision of the ALJ is hereby affirmed.  An appropriate order accompanies this Opinion.

DATED: July 12, 2011

                                                           s/ Jose L. Linares
                                                           JOSE L. LINARES,
                                                           UNITED STATES DISTRICT JUDGE